UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JANE DOE,  
    Plaintiff,

vs.

MOLLY ALVEY,  
    Defendant.

Case No. 1:20-cv-410  
Dlott, J.  
Litkovitz, M.J.

ORDER AND REPORT  
AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 1983 against defendant Molly Alvey ("Alvey") alleging that defendant violated the First and Fourteenth Amendments to the U.S. Constitution by retaliating against plaintiff after she engaged in constitutionally protected speech. (Doc. 1). This matter is before the Court on defendant's motion to dismiss (Doc. 7), plaintiff's response in opposition (Doc. 9), plaintiff's motion to strike (Doc. 11), plaintiff's motion, in the alternative, for leave to amend the complaint (Doc. 11), and defendant's reply memorandum. (Docs. 13, 14).

**I. Facts**

Plaintiff makes the following allegations in her complaint: plaintiff accepted a full athletic scholarship at the University of Cincinnati ("UC") to play volleyball. (Doc. 1 at PAGEID 2). Plaintiff alleges that in August 2019, Alvey, one of plaintiff's volleyball coaches at UC, "began harassing and retaliating against" her. (*Id*. at PAGEID 2, 3). On or about August 30, 2019, plaintiff left her phone out on a table violating a "minor team rule." (*Id*. at PAGEID 3). Plaintiff "immediately took accountability, put the phone away, and publicly apologized to Alvey and the entire team[.]" (*Id*.). Plaintiff alleges that Alvey, in front of the entire volleyball team, "demanded another explanation as to why plaintiff had her phone out at breakfast." (*Id*.). Plaintiff once again apologized to Alvey. (*Id*.).

During a team practice on or about September 3, 2019, Alvey "demanded" another explanation why plaintiff had her phone out on the table. (*Id.*). Plaintiff "publicly apologized to Alvey and her teammates." (*Id.*). Plaintiff alleges that subsequently, Alvey provided "little, if any coaching to plaintiff" and "sought to embarrass, humiliate, and isolate plaintiff on a routine basis from her teammates." (*Id.*).

On or about September 23, 2019, plaintiff attended a "film session" with Alvey and her teammates. (*Id.* at PAGEID 4). During this film session, plaintiff alleges that Alvey "suggested that the bench players were not cheering loudly enough for the starters and engaged in conversations during play which caused UC to lose a game." (*Id.*). Plaintiff "spoke up and defended" a teammate, and all of the bench players, and told Alvey that "the actions of [the] bench players was not the reason the team lost the game." (*Id.*). Plaintiff told Alvey, "they lost the game as a team." (*Id.*). Thereafter, Alvey excluded plaintiff from traveling with the team to an away game and required her to "constantly shag balls and keep score rather than develop and improve her skills" during team practices. (*Id.*).

On or about October 1, 2019, Alvey called plaintiff into a meeting in her office with an assistant coach also present. (*Id.*). Alvey asked plaintiff whether she "belonged at UC" and whether "she was a good fit." (*Id.*). Plaintiff alleges that "Alvey was attempting to pressure her into quitting the team and was a continuation of the harassment and mistreatment she had been experiencing." (*Id.* at PAGEID 5). Following this meeting, plaintiff spoke with Maggie McKinley ("McKinley"), a member of UC's athletic department, "to complain about being retaliated against and mistreated by Alvey." (*Id.*). McKinley told plaintiff to "play the game and do everything that Alvey asked her to do." (*Id.*). After this meeting, plaintiff sent an email to Alvey "reaffirming her commitment to UC" and hoped that "that they could put any

miscommunication behind them." (*Id.*). Plaintiff alleges that following her email to Alvey, her teammates messaged her saying that the coaching staff informed them that plaintiff quit the volleyball team. (*Id.*).

The following morning, plaintiff met with Alvey and McKinley where they "demanded" plaintiff sign a document punishing her for the "cell phone incident" and additionally noting that plaintiff was disrespectful to the coaching staff. (*Id.* at PAGEID 5-6). Plaintiff "signed the document under duress and pressure from Alvey and McKinley." (*Id.* at PAGEID 6). Later, plaintiff, for the third time, met with McKinley and told her that she was being retaliated against by Alvey. (*Id.*). McKinley told plaintiff to "play [Alvey's] games." (*Id.*).

From October 4 to 6, 2019, plaintiff was excluded from participating in games or practicing with the volleyball team and was expected instead to watch the games from the stands. (*Id.*). Plaintiff alleges that "[t]his requirement was again designed by Alvey to humiliate, embarrass, and isolate plaintiff from her teammates with the hopes that she would quit the team." (*Id.*). Alvey told plaintiff that she needed to apologize to everyone to be reinstated to the team. (*Id.*). Plaintiff sent an apology to the entire team through the "team group chat." (*Id.*). Alvey, not content with plaintiff's apology, told plaintiff that she needed to apologize to everyone in person. (*Id.* at PAGEID 7). Plaintiff alleges this conduct "was again designed by Alvey to humiliate, embarrass, and isolate plaintiff from her teammates with the hopes that she would quit the team." (*Id.*). Plaintiff complied with Alvey's request and apologized to the entire team in person. (*Id.*).

Although plaintiff apologized, Alvey nonetheless refused to allow her to travel with the team, ignored her, and forced her to shag balls and keep score during drills. (*Id.*). Around November 2019, plaintiff filed a complaint with UC's Title IX office "concerning the retaliatory

3

actions of Alvey." (*Id.*). Plaintiff claims that her complaints to McKinley and UC's Title IX office constitute constitutionally protected speech. (*Id.*). Plaintiff alleges that in January 2020, Alvey told plaintiff her scholarship would not be renewed and she would no longer be a member of the volleyball team. (*Id.* at PAGEID 8).

## II. Standard of Review

Defendant moves the Court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. (Doc. 7). In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashcroft*, 556 U.S. 662, 678. "Put another way, bare assertions of legal conclusions are not

4

sufficient." *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 618 (S.D. Ohio 2016). And, "[t]o survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough." *Id*. at 617.

The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

## III. Resolution

### a. Defendant's motion to dismiss (Doc. 7)

In her sole cause of action, plaintiff alleges she was retaliated against by defendant in violation of the First Amendment after plaintiff complained to UC's Title IX Office and McKinley about being retaliated against and mistreated by defendant. (Doc. 1 at PAGEID 5, 7, 8; *see* Doc. 11 at PAGEID 65). Plaintiff alleges that her complaints to both McKinley and the UC Title IX Office constitute protected speech under the First Amendment. (Doc. 1 at PAGEID 7, 8).[1]

---

[1] To the extent that plaintiff also alleges a Due Process claim in her complaint, defendant moves to dismiss this claim on the basis that there is no constitutionally protected property interest in participation in college athletics and the renewal of plaintiff's college scholarship. (Doc. 7 at PAGEID 29-30). Plaintiff puts forth no argument in her response in opposition to defendant's motion to dismiss on the Due Process claim. (Doc. 9). Therefore, to the extent that plaintiff alleges a Due Process claim, the Court recommends that defendant's motion to dismiss should be granted.

In the motion to dismiss, defendant argues that plaintiff fails to state a claim for relief by "fail[ing] to set forth any facts demonstrating she engage[d] in constitutionally protected activity." (Doc. 7 at PAGEID 25). Relying on Sixth Circuit precedent, defendant argues that plaintiff's speech amounted only to a criticism of coaching decisions, which according to defendant, does not constitute protected speech. (*Id.*; *see* Doc. 14 at PAGEID 87-88).

It is well-established that "school officials may not retaliate against students based on their *protected speech*." *Kesterson v. Kent State Univ.*, 967 F.3d 519, 525 (6th Cir. 2020) (emphasis added). As the Supreme Court held, "state colleges and universities are not enclaves immune from the sweep of the First Amendment. 'It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Healy v. James*, 408 U.S. 169, 180-81 (1972) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). To establish her First Amendment retaliation claim, plaintiff must demonstrate three elements: (1) "[s]he engaged in constitutionally protected speech"; (2) "[s]he suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected speech"; and (3) "the protected speech was a substantial or motivating factor in the decision to take the adverse action." *Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011). *See also Kesterson*, 967 F.3d at 525. At issue here is the first element; namely, whether plaintiff engaged in constitutionally protected speech.

"The Supreme Court has established three frameworks for evaluating student speech: (1) vulgar and obscene speech is governed by *Bethel School Dist. v. Fraser*, 478 U.S. 675 (1986); (2) school-sponsored speech is governed by *Hazelwood v. Kuhlmeier*, 484 U.S. 260 (1988); and (3) all other speech is governed by *Tinker*." *Lowery v. Euverard*, 497 F.3d 584, 587 (6th Cir. 2007). Here, plaintiff's "speech" is governed by *Tinker*. *See Id*. (applying *Tinker* to student-

athlete's speech). *See also Green v. Sandy*, No. 5:10-cv-367, 2011 WL 4688639, at *5-6 (E.D. Ky. Oct. 3, 2011) (applying *Tinker* to a college-athlete's speech in her First Amendment retaliation claim).

Under *Tinker*, "school officials may regulate speech that materially and substantially interferes 'with the requirements of appropriate discipline in the operation of the school.'" *Lowery*, 497 F.3d at 588 (quoting *Tinker*, 393 U.S. at 513). Moreover, in analyzing speech under *Tinker*, "[t]he court must consider the *content and context* of the speech, and the nature of the school's response." *Id.* (emphasis added). *See also Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (whether speech is "protected" under the First Amendment is a "context-specific" inquiry).[2]

Protected student-athlete speech includes complaints about race and sex discrimination and sexual assault. Thus, a student-athlete's complaint to a coach about sex and race discrimination after she was told to remove photographs from her social media account is constitutionally protected speech. *Ifeanyi*, 2018 WL 8805034 at *8. Likewise, a student-athlete's complaint about sexual assault to her coach constitutes constitutionally protected speech. *Kesterson*, 967 F.3d at 525.

Conversely, student-athlete speech is not protected where the speech amounts to criticism of coaching decisions that is "reasonably likely to cause substantial disruption" to the team. *Lowery*, 497 F.3d at 594. Student-athlete complaints about coaching methods and coaching

---

[2] Because plaintiff is not a public employee, "[t]he speech need not touch on a matter of public concern to qualify as constitutionally protected activity in the Sixth Circuit[.]" *Ifeanyi v. Alvey*, No. 1:18-cv-193, 2018 WL 8805034, at *8 (S.D. Ohio July 23, 2018). *See Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580 (6th Cir. 2008) (where the Sixth Circuit held the "matter of public concern" test does not apply to First Amendment retaliation claims outside the public employment context); *see also Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 514 (6th Cir. 2017) ("The district court correctly recognized that Davis's speech need not touch upon a matter of public concern, because the public concern test is explicitly limited to government employees[.]").

decisions are not subject to judicial interference and therefore cannot form the basis of a First Amendment retaliation claim. *Id. See also Green*, 2011 WL 4688639 at *5-6 (where the court held a student-athlete's criticism of the coach's "handling of internal team matters, including player attendance, retention, and study requirements and recommendations on how to improve the soccer program" was not constitutionally protected speech).

The Sixth Circuit's decision in *Lowery* is instructive in this regard. In *Lowery*, the Sixth Circuit held there was no First Amendment protection for student-athlete speech when high school football players, who disagreed with the head coach's management of the team, circulated a petition stating that they hated the head coach and did not want to play for him. *Lowery*, 497 F.3d at 585-86. The coaching staff learned of the petition, individually questioned the football players, and determined that the players who signed the petition but apologized to the coach were permitted to play, but the others, including the plaintiffs, who did not were dismissed from the team. *Id*. at 586. The players who were dismissed from the team brought a lawsuit against the principal, football coach, and board of education, claiming that their removal from the school football team was in retaliation for their protected speech and violated the First Amendment. *Id*. at 585.

The Sixth Circuit found that the petition circulated by the players was not protected speech under the First Amendment. In examining the context of the speech in question, the Court of Appeals acknowledged the well-established rule that "students do not have a general constitutional right to participate in extracurricular athletics" *Id*. at 588 (citations omitted), and "student athletes are subject to more restrictions than the student body at large" given the differing natures of the classroom and playing field. *Id*. at 589 (citing *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995)). As the Court of Appeals noted, the success of an athletic team

8

depends in large part on the coach, whose ability to lead is often dependent on his or her ability to maintain order and discipline. *Id*. at 594. *Tinker* does not require school officials to show an actual disruption of the team but only that "it was reasonable for [school officials] to forecast that the petition would disrupt the team." *Id*. at 593. The petition attacking the coach in *Lowery* "was reasonably likely to cause substantial disruption" on the team because it not only undermined the coach's authority and ability to lead the team but also threatened the unity of the team. *Id*. at 594. The Sixth Circuit held that "there was no constitutional violation in plaintiffs' dismissal from the team. *Tinker* does not require teachers to surrender control of the classroom to students, and it does not require coaches to surrender control of the team to players." *Id*. at 600-01.

In the instant case, plaintiff's complaint alleges that she engaged in constitutionally protected speech when she complained about defendant Alvey's "mistreatment" and "retaliatory" conduct to McKinley and the Title IX office. (Doc. 1 at PAGEID 7). Although plaintiff characterizes her speech as complaints about mistreatment and retaliation, her complaints are based on defendant Alvey's: (1) repeated demands that plaintiff explain and apologize for leaving her cell phone out on the table violating a minor team rule (*Id*. at PAGEID 3); (2) provision of "little" coaching to plaintiff (*Id*.); (3) requirement that plaintiff shag balls and keep score after plaintiff spoke up at a film session (*Id*. at PAGEID 4); (4) inquiry if plaintiff was a "good fit" for the volleyball team (*Id*.); (5) conduct in preventing plaintiff from practicing and traveling with the team to away games (*Id*. at PAGEID 4, 6, 7); and (6) false claims that plaintiff quit the team and was disrespectful to the coaching staff (*Id*. at PAGEID 5). Plaintiff's complaints concerned routine coaching decisions, such as playing time, practicing and traveling with the team, and forcing plaintiff to apologize for violating a minor team rule and disrespecting

9

her coaching staff.  As in *Lowery*, the Court finds that plaintiff's speech amounted to no more than criticisms of defendant Alvey's coaching decisions and methods, which Alvey could reasonably have forecasted would disrupt the team.  Under these circumstances, plaintiff's dismissal from the volleyball team based on such complaints does not violate plaintiff's First Amendment rights.  *See Lowery*, 497 F.3d at 600-01; *Green*, 2011 WL 4688639 at *5-6.

      Nevertheless, plaintiff cites two cases, *Ifeanyi* and *Kesterson*, as authority for her allegations that she engaged in constitutionally protected speech.  In *Ifeanyi*, a former UC volleyball player asserted, *inter alia*, a First Amendment retaliation claim against the university, the head volleyball coach, and the senior associate athletic director.  *Ifeanyi*, 2018 WL 8805034 at *1.  There, the coach  "criticized as 'too sexy' the fully-clothed photographs [the plaintiff] posted of herself on her personal social media accounts."  *Id*.  The coach "demanded" that the plaintiff open up her social media account and "remove" certain photographs of herself, saying, "When the football players see this, what do you think they see?  They see your breasts.  It's seductive."  *Id*. at *1-2.  The plaintiff complied and removed the requested photographs out of fear of retaliation and continued shaming from the coach.  *Id*. at *2.  After the coach requested that the plaintiff remove additional photographs from her social media account, the plaintiff sent a text message to the coach describing how she felt she was being "body shamed" and "sexualized."  *Id*.  The coach subsequently dismissed the plaintiff from the volleyball team citing "different philosophies."  *Id*.  The coach acknowledged that she read the plaintiff's text message, but would not discuss it further.  *Id*.  The plaintiff filed a complaint with UC's Title IX office alleging discrimination against the coach and the athletic director.  *Id*.

      The Court denied the defendants' motion to dismiss and held the plaintiff successfully pled a First Amendment retaliation claim.  *Id*. at *8.  The Court held the plaintiff engaged in

10

constitutionally protected activity by raising concerns about "sex and race discrimination" in her text message to the coach "where she object[ed] to being sexualized because she is pretty and state[ed] that there is a history of black women being sexualized." *Id.*

In *Kesterson*, a college student-athlete brought a lawsuit against the university and athletic coach alleging First Amendment retaliation, equal protection, and Title IX causes of action after the plaintiff reported an alleged sexual assault by the defendant-coach's son. *Kesterson*, 967 F.3d at 523-24. In reversing the district court's granting of summary judgment to the defendants, the Sixth Circuit held the plaintiff successfully stated a First Amendment retaliation claim against the coach. *Id.* at 525-26. Notably, the defendants in *Kesterson* "concede[d] that the First Amendment protecte[d] [the plaintiff's] sexual assault allegations." *Id.* at 525. That is, whether the plaintiff's speech was constitutionally protected, the first element of a First Amendment retaliation claim, was not contested by the defendants.

Neither *Kesterson* nor *Ifeanyi* involved speech that called into question the coach's methods or decisions in teaching or training her athletes. Plaintiff does not allege that she was discriminated against on the basis of her race or gender (*Ifeanyi*) or that she reported a sexual assault to her coach (*Kesterson*). Rather, plaintiff alleges that she reported defendant Alvey's allegedly "harassing, demeaning, and retaliatory behavior" to McKinley and filed a complaint with UC's Title IX Office. (Doc. 1 at PAGEID 8). As explained above, plaintiff's speech is premised on defendant Alvey's coaching decisions: whether plaintiff was permitted to play, practice, and travel with the team and whether plaintiff was required to apologize for violating team rules and allegedly disrespecting her coaching staff. Not all student-athlete complaints to or about a coach rise to the level of protected speech under the First Amendment. *See Lowery*,

497 F.3d at 600-01; *Green*, 2011 WL 4688639 at *5-6. *Ifeanyi* and *Kesterson* do not support plaintiff's position in this case.

Plaintiff also alleges she engaged in protected speech when she filed a Title IX complaint with UC's Title IX office alleging the "retaliatory actions of Alvey." (Doc. 1 at PAGEID 7). The Court, however, finds that Title IX is unsuitable to plaintiff's First Amendment retaliation claim because Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex: "No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). Defendant correctly observes (Doc. 7 at PAGEID 28, Doc. 14 at PAGEID 86, 88) that plaintiff's complaint is devoid of *any* allegations of discrimination based on her sex or gender. In this regard, plaintiff has failed to cite any authority supporting her claim that the filing of a Title IX complaint, with no underlying allegations of discrimination based on sex or gender, is "speech" that is protected under the First Amendment. Nor has the Court found any authority which would support a First Amendment retaliation claim under these circumstances. In viewing the allegations in the light most favorable to plaintiff, the Court finds that plaintiff has failed to show that she engaged in constitutionally protected speech under the First Amendment. Accordingly, the Court recommends that defendant's motion to dismiss should be granted on this basis.[3]

---

[3] The Court need not determine at this juncture whether plaintiff satisfies the remaining elements of her First Amendment retaliation claim because, as discussed, plaintiff fails to allege facts sufficient to demonstrate she was engaged in constitutionally protected speech.

### b. Plaintiff's motion to strike (Doc. 11)

Plaintiff filed a motion to strike two documents attached to defendant's motion to dismiss: (a) the Reaffirmation Agreement, and (b) the Title IX Complaint. (Doc. 11 at PAGEID 64). Plaintiff argues the Reaffirmation Agreement was "mentioned only in passing in the complaint and is not integral to plaintiff's cause of action for retaliation." (*Id*.). Plaintiff also argues that the Title IX Complaint should be stricken because "it is not a full and complete record of the entire Title IX complaint process," and additional documents and records are needed to provide a more complete record of the process. (*Id*.). Defendant argues in response that the attached documents are repeatedly referred to in plaintiff's complaint and are integral to the claims asserted by plaintiff. (Doc. 13 at PAGEID 83-84).

Where, as here, a party attaches exhibits to a motion to dismiss, the Court must determine whether it may consider the exhibits in ruling on the motion without converting the motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). Generally, in deciding a motion to dismiss, the Court is limited to the allegations of the complaint and may not resort to matters outside the pleadings. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). However, when a document is attached to the complaint and is integral to plaintiff's claims, the Court may consider such document without converting a motion to dismiss to one for summary judgment. *Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013) (citing *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c))). Likewise, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic*

13

*Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *accord Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

The Court denies plaintiff's motion to strike as moot because although the Court has discretion to consider materials outside the pleadings when ruling on a Rule 12(b)(6) motion, plaintiff nevertheless fails to successfully plead factual allegations in her complaint necessary to support her First Amendment retaliation cause of action. Importantly, the Court has not considered the Reaffirmation Agreement or the Title IX complaint in reaching its decision on defendant's motion to dismiss. In light of this fact, and considering the purpose of Rule 12, the Court denies plaintiff's motion to strike as moot. *See Berry v. Frank's Auto Body Carstar, Inc.*, 817 F. Supp. 2d 1037, 1041-42 (S.D. Ohio 2011) (internal citations omitted), *aff'd*, 495 F. App'x 623 (6th Cir. 2012). ("motions to strike are disfavored [and] a Court should ignore inadmissible evidence instead of striking it from the record").

**c. Plaintiff's motion, in the alternative, for leave to amend her complaint (Doc. 11)**

In the alternative, plaintiff seeks to amend her complaint in this matter pursuant to Fed. R. Civ. P. 15. (Doc. 11 at PAGEID 67-68). In her proposed amended complaint, plaintiff adds factual allegations that defendant had knowledge of plaintiff's meeting with McKinley and the subsequent filing of her Title IX complaint. (*Id.*, Exh. 1 at PAGEID 74, 76-77).

In response, defendant argues that plaintiff's motion should be denied because her proposed amended complaint is futile. (Doc. 14 at PAGEID 89). Defendant argues that plaintiff's proposed amendment "does not cure the problem" that plaintiff's speech is not protected under the First Amendment. (*Id.*).

Fed. R. Civ. P. 15(a) governs amendments to the pleadings. A complaint may be amended once as a matter of course within 21 days of service. Fed. R. Civ. P. 15(a)(1)(A). If a

14

plaintiff wishes to amend the complaint after the 21-day period has expired, as in this case, she must obtain written consent of the opposing party or leave of the Court. Fed. R. Civ. P. 15(a)(2).

The granting or denial of a motion to amend pursuant to Fed. R. Civ. P. 15(a) is within the discretion of the trial court. Leave to amend a complaint should be liberally granted. *Foman v. Davis*, 371 U.S. 178 (1962). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). The test for futility is whether the amended complaint could survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

Plaintiff's motion for leave to file an amended complaint should be denied as futile. Although the proposed amended complaint adds factual allegations demonstrating that defendant had knowledge of plaintiff's conduct in meeting with McKinley and the subsequent filing of her Title IX complaint (Doc. 11, Exh. 1 at PAGEID 74, 76-77), plaintiff does not introduce *any* factual allegations concerning the protected status of her speech under the First Amendment. Rather, plaintiff's proposed amendments concern the latter two elements of a First Amendment retaliation claim, i.e., that plaintiff suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected speech *and* the protected speech was a substantial or motivating factor in the decision to take the adverse action. *See Westmoreland*, 662 F.3d at 718. It is a prerequisite of a First Amendment retaliation claim that plaintiff first engage in constitutionally protected speech. *Id.* Accordingly, allowing plaintiff to amend her

complaint would be futile because plaintiff does not introduce any additional allegations concerning whether her speech was constitutionally protected under the First Amendment.

**IV. Conclusion**

In accepting all factual allegations as true and making reasonable inferences in favor of plaintiff, the Court recommends that defendant's motion to dismiss should be granted because plaintiff fails to state a claim for relief by not alleging facts that would support the conclusion that she engaged in constitutionally protected speech.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's motion to strike (Doc. 11) is **DENIED** as moot.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. 7) should be **GRANTED**.

2. Plaintiff's motion, in the alternative, for leave to amend her complaint (Doc. 11) should be **DENIED**.

Date: 2/2/2021

Karen L. Litkovitz
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JANE DOE,                                              Case No. 1:20-cv-410
    Plaintiff,                                  Dlott, J.
                                                    Litkovitz, M.J.

vs.

MOLLY ALVEY,
    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).