IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | : | Case No. 1:20-cv-410 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING DEFENDANT'S MOTION TO DISMISS** |
| MOLLY ALVEY, | : | |
| Defendant. | : | |

This matter is before the Court on the Magistrate Judge's Report and Recommendation (Doc. 15) that Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 7) be granted. The Magistrate Judge also denied as moot Plaintiff's Motion to Amend her Complaint (Doc. 11). Plaintiff objected to the Report and Recommendation and reiterated her request to amend the Complaint (Doc. 17), and Defendant responded to Plaintiff's Objections (Doc. 18). For the reasons set forth below, the Court will adopt the Report and Recommendation (Doc. 15) and grant Defendant's Motion to Dismiss (Doc. 7). Plaintiff's request to amend her Complaint will be denied as futile.

**I.      BACKGROUND**

    **A. Facts Alleged**

The Magistrate Judge provided an excellent factual recitation in her Report and Recommendation which the Court adopts here. To summarize, Plaintiff Jane Doe was a highly recruited volleyball player, and she accepted a full scholarship from the University of Cincinnati ("UC"), a state university, to play volleyball. During Doe's first fall volleyball season, Defendant Molly Alvey, UC's Head Women's Volleyball Coach, began a campaign of bullying,

1

humiliating, and isolating Doe and denying her meaningful practice and playing time. According to Doe's Complaint, Alvey's abuse began after Doe mistakenly left her cell phone on the table during a team meal in violation of "a minor team rule." (Doc. 1 at ¶ 13.) The difficulties escalated after Doe respectfully defended her fellow bench players during a film session, including a crying teammate against whom Alvey seemed to direct her ire. The identified teammate quit the team a few days later.

As a result of Alvey's alleged abuse, Doe suffered psychologically and academically, and she reported Alvey's actions to both the UC Athletic Department and the Title IX Office. At the conclusion of the volleyball season, Alvey declined to renew Doe's scholarship and dismissed her from the team.

### B. Procedural Posture

Doe alleges that Alvey dismissed her from the team and declined to renew her scholarship in retaliation for Doe's complaints to the Athletic Department and Title IX Office, in violation of the free-speech-retaliation protections of the First (and Fourteenth) Amendments. As UC is a state university, Doe initiated this action pursuant to 42 U.S.C. § 1983. (Doc. 1.)

Defendant Alvey filed a Motion to Dismiss the Complaint for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 7.) Alvey contends that Doe's complaints to UC's Athletic and Title IX Offices do not involve constitutionally protected speech. Therefore, according to Alvey, even if Doe's allegations can be proven, Alvey violated no constitutional rights. Alvey attached two documents to her Motion to Dismiss: (A) Doe's Title IX Report Form; and (B) the "Individual Expectations" document signed by Doe and Alvey and referenced in paragraph 39 of Doe's Complaint.

2

In addition to opposing Alvey's dismissal motion, Doe filed a Motion to Strike the Attached Documents and to Amend her Complaint. (Doc. 11.) Alvey opposed Doe's Motion to Strike. (Doc. 13.)

The Court referred this matter, pursuant to 28 U.S.C. § 636(b), to Magistrate Judge Karen L. Litkovitz who issued a Report and Recommendation that Alvey's Motion to Dismiss be granted. In addition, she denied Doe's Motion to Strike Documents and Amend Complaint as moot. (Doc. 15.)

Doe filed Objections to the Report and Recommendation and renewed her request to amend her Complaint. (Doc. 17.) Doe contends the Magistrate Judge erred in concluding that her reports to the UC Athletic and Title IX Offices do not involve constitutionally protected speech. Alvey responded to Doe's Objections. (Doc. 18.)

## II. MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. A district court examining the sufficiency of

3

a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–79.

Where a motion to dismiss is referred to a magistrate judge for a report and recommendation, the District Court conducts a *de novo* review of any properly filed objections to the recommendation. Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

### III.     CONSTITUTIONALLY PROTECTED SPEECH

For a First Amendment retaliation claim to survive a motion to dismiss, a plaintiff must allege that: (1) she engaged in constitutionally protected speech; (2) "she suffered an injury that would deter a person of 'ordinary firmness' from continuing to speak out"; and (3) the defendant's actions were at least partly motivated by the plaintiff's speech. *Kesterson v. Kent State Univ.*, 967 F.3d 519, 525 (6th Cir. 2020) (quoting *Jenkins v. Rock Hill Loc. Sch. Dist.*, 513 F.3d 580, 585–86 (6th Cir. 2008)). The pivotal issue before the Court here is whether Doe's reports to the UC Athletic and Title IX Offices involve constitutionally protected speech. The Court agrees with the Magistrate Judge's conclusion that they do not.

The parties agree that this case is governed by *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969).[1] As well-explained in the Report and Recommendation, student-athlete speech is constitutionally protected when it involves sex or

---

[1] As the Magistrate Judge correctly stated:
> The Supreme Court has established three frameworks for evaluating student speech: (1) vulgar and obscene speech is governed by *Bethel School Dist. v. Fraser,* 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986); (2) school-sponsored speech is governed by *Hazelwood v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); and (3) all other speech is governed by *Tinker.*

(Doc. 15 at PageID 98 (quoting *Lowery*, 497 F.3d at 588).)

4

race discrimination or allegations of sexual assault.² *See Kesterson*, 967 F.3d at 525; *Ifeanyi v. Alvey*, No. 1:18-cv-193, 2018 WL 8805034, at *8 (S.D. Ohio July 23, 2018). However, student-athlete speech does not enjoy First Amendment protection "where the speech amounts to criticism of coaching decisions that is 'reasonably likely to cause substantial disruption' to the team." (Doc. 15 at PageID 99 (quoting *Lowery v. Euverard*, 497 F.3d 584, 594 (6th Cir. 2007).) To determine whether the speech involves such potentially disruptive coaching criticism—and is therefore not constitutionally protected under *Tinker*—the Court "must consider the content and context of the speech, and the nature of the school's response." *Lowery*, 497 F.3d at 588.

Doe alleges that the difficulties began when she accidentally left her phone on the table during a team meal, in violation of "a minor team rule." (Doc. 1 at ¶ 13.) Doe publicly apologized to Alvey, but Alvey demanded two additional public apologies for the rule violation. (*Id.* at ¶¶ 14–18.) "Following this third apology, Alvey provided little, if any, coaching to Plaintiff . . . [and] sought to embarrass, humiliate, and isolate Plaintiff on a routine basis from her teammates." (*Id.* at ¶¶ 19–20.)

During a film session the next month, Alvey blamed the bench players and seemed to single out a particular teammate, causing that teammate to cry and later quit the team. (Doc. 1 at ¶¶ 21–22.) In response, "Plaintiff spoke up and defended her teammate . . . [and stated that] no one player caused them to lose the game, but rather that they lost the game as a team." (*Id.* at ¶¶ 23–24.) After Doe spoke up during the film session, Alvey excluded Doe from team travel and required Doe to "shag balls and keep score [during practices] rather than develop and improve her skills." (*Id.* at ¶ 25–26.) Shortly thereafter, Alvey called Doe into a meeting, and Doe "felt

---

² Because a student athlete is not a public employee, Doe's "speech need not touch on a matter of public concern" to enjoy First Amendment protection. *Ifeanyi v. Alvey*, No. 1:18-cv-193, 2018 WL 8805034, at *8 (S.D. Ohio July 23, 2018); *see also Nailon v. Univ. of Cincinnati*, 715 F. App'x 509, 514 (6th Cir. 2017).

like Alvey was attempting to pressure her into quitting the team and was a continuation of the harassment and mistreatment she had been experiencing." (Doc. 1 at ¶¶ 27–30.)

Doe reported these events to the UC Athletic Department where she was told she had been "set up" and to "play the game and do everything that Alvey asked her to do." (*Id.* at ¶¶ 31–34.) Doe allegedly tried to repair her relationship with Alvey, but Alvey told teammates Doe had quit the team. (*Id.* at ¶¶ 35–38.)

The next morning, Doe met with Alvey and an Athletic Department employee where Doe signed an "Individual Expectations" document that "again sought to punish Plaintiff for the cell phone incident which she had apologized for on three occasions and claimed that Plaintiff was disrespectful to the coaching staff on two other occasions without mentioning how or what constituted said behavior." (Doc. 1 at ¶¶ 39–40.) Doe "signed this document under duress and pressure from Alvey" and the Athletic Department employee. (*Id.* at ¶ 41.) For the next three days, Doe was excluded from team activities and required to watch the volleyball games from the spectator's stands. (*Id.* at ¶ 44.) Alvey then required Doe to apologize in person to her teammates, rejecting Doe's efforts to apologize through the team's group chat. (*Id.* at ¶¶ 47–53.)

Despite Doe's apology, Alvey continued to exclude Doe from team travel and require her to shag balls and keep score during practices. (Doc. 1 at ¶¶ 54–57.) Doe then complained to UC's Title IX Office. (*Id.* at ¶ 59.) The situation did not improve, and at the end of the volleyball season, Alvey dismissed Doe from the team and declined to renew her scholarship. (*Id.* at ¶ 64.)

The content and context of the speech alleged indicates that Doe's speech amounts to criticism of coaching decisions reasonably likely to cause substantial team disruption, and is, therefore, not constitutionally protected. Unlike the plaintiffs in *Kesterson* and *Ifeanyi*, Doe did

6

not complain about sex or race discrimination, sexual assault, or anything else outside of the volleyball context. Nor is this a "whistleblower situation, where players were disciplined for reporting improprieties." *Lowery*, 497 F.3d at 600. Rather, Doe complained that Alvey responded excessively to perceived violations of volleyball team rules by excluding Doe from volleyball team travel and activities and denying her meaningful practice opportunities.

To paraphrase *Lowery*, "[t]he issue is not whether the Court approves of [Alvey's] methods, or whether it thinks [Doe's] dismissal from the team was fair . . . [as] 'it is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion.'" *See Lowery*, 497 F.3d at 589 (quoting *Wood v. Strickland,* 420 U.S. 308, 326 (1975)). Indeed, the Court may agree that Doe's allegations, if proven, demonstrate a distinct lack of compassion. However, Doe's complaints to the Athletic and Title IX Offices do not rise to the level of constitutionally protected speech.

Doe also moved to amend her Complaint. (Docs. 9, 11.) In her proposed First Amended Complaint (Doc. 9-1), Doe added allegations that Alvey knew Doe met with UC Athletic Department personnel and that, pursuant to UC policy, the Title IX Office notified Alvey of Doe's Complaint. (Doc. 9-1 at PageID 54, 56–57.) However, these factual additions do not change the Court's conclusion that Doe's speech is not constitutionally protected. Accordingly, the amendment would be futile.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's objections are overruled, and the Court adopts the Report and Recommendation (Doc. 17). Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 7) is hereby **GRANTED**. Plaintiff's request to amend her Complaint is **DENIED** as futile, and this matter shall be terminated from the Court's docket.

**IT IS SO ORDERED**.

Dated:  March 23, 2021            S/Susan J. Dlott_____
                                  Judge Susan J. Dlott
                                  United States District Court